We'll move on to the third case of the day, Kleber v. CareFusion Corporation. Ms. Smith. Good morning, Your Honors. May it please the Court, my name is Dara Smith and I represent the appellant, Mr. Dale Kleber. This case presents a critical issue of first impression, which is whether the Court should eliminate some of the ADEA's most critical protections for older job seekers. CareFusion is asking the Court to write in an extra textual exception to a remedial statute in order to cut out protections for people like Mr. Kleber, who want and need to work but can't get in the door because of arbitrary policies that screen out older job applicants. That exception would insulate even unreasonable policies from judicial scrutiny, and it would remove all cause for employers to self-examine their policies, which the Supreme Court has said is a paramount goal. First and foremost, CareFusion has shown nothing in the text of Section 4A.2 of the ADEA, the disparate impact provision, to suggest that Congress intentionally but silently left applicants out of that provision's protection, despite finding that hiring discrimination against older job applicants was a grave concern. However, CareFusion's view would also require the Court, under Griggs, to presume that Congress deliberately left in protections for internal candidates seeking promotion or transfer but excluded applicants. That's simply nowhere in the text and requires a lot of assumptions that our reading doesn't require. To discuss some of the specifics of the text, of course they're all laid out in the briefing, but particularly important is the Act's reference to any individual, and then at the end of the section to such individual. Individual is, of course, a broader term than employee. Congress could have chosen to limit coverage to employees but chose to use any individual instead. Any is also key here. This is not saying individuals in general. It's not referencing back to employees from the beginning of the provision. It says any individual. That's extremely broad, and that was exactly what Congress meant to do. Equally importantly, at the end of the section, it says because of such individual's age. This is referring to actions that adversely affect someone because of such individual's age. Now, that's not a reference back to employees. It's not limiting. It's referring back to any individual from earlier in their provision. So Congress used that twice and for very good reason, which is to ensure broad coverage, including for job applicants. I want to specifically address the otherwise adversely affect his status as employee language that the 11th Circuit found significant. That is exactly backwards as an interpretation of the statute. Otherwise is a broadening language that is supposed to mean that the statute includes more people and more practices than appear prior in the statute. That's the inclusive communities case where the Supreme Court said that otherwise expands the act's coverage. So to the extent that or otherwise adversely affects the status as employee appears in this case, it's not limiting the prior provisions to things that are about status as an employer, especially not current status as an employee. There's really no reason to believe that that's the case. Instead, Congress was trying to make sure that all adverse employment actions were covered here, and so that otherwise clause ensures broadening of the statute rather than narrowing it. And the 11th Circuit, in the majority opinion in the Villareal-Ambach decision, just was completely wrong on that. That's our position there. And in particular, because 4A2 ends with because of such individual's age, that's far more indicative of the breadth of the provision that Congress meant to imply than the otherwise affect his status as an employee language. We know that that phrase, because of such individual's age, does include disparate impact, right? Yes, Your Honor. It does not require intentional discrimination. Right. That's exactly right, Your Honor. The Smith decision holds that 4A2 is the source of the disparate impact coverage in the agency. And is it correct that the Age Discrimination Act, if we agree with you, still retains a defense for the use of reasonable factors other than age, which presumably would be the main debate going on between the parties if we were to remand? That's exactly right, Your Honor. The reasonable factor other than age, we say RFOA very often in the brief. Yes. We learned FDA's jargon for the last case. Okay. Go ahead. Yes, Your Honor. The reasonable factor other than age defense is the equivalent under the Age Act to the business necessity defense under Title VII. And, yes, that would absolutely still apply. And that's why a reading of the statute that excludes applicants is so unduly narrow, because as it is, only unreasonable policies are unlawful. So reading in an exception here would mean that employers were protected even if their practices were unreasonable. So that's exactly right. That would be the primary subject on remand. The defense is telling us that Griggs didn't actually decide this question with respect to applicants. Could you, with the identical language under the Title VII of the Civil Rights Act of 1964, what's your best argument or the clearest indication in your view that Griggs did decide that applicants are covered? There's two primary reasons that that's clear, Your Honor. The first is Griggs' language itself, which speaks of a condition of employment in or transfer to jobs. It couldn't be clearer that the Supreme Court was referring to both. It refers to people seeking employment. But equally important in our view is the fact that the Seventh Circuit, this Court, has repeatedly referred to Griggs as a hiring case. In the Lewis case, I think most recently, and in cases that were closer in time as well to the Griggs case, U.S. versus Chicago as well, I don't believe that's cited in the briefing. So I can file a 28-J letter if the Court would like. But there are just numerous cases where this Court has referred to Griggs as discussing qualifications that disqualified minority applicants, filtered out minority applicants, referred to black applicants, and even specifically whether to employ or promote. So it really couldn't be clearer that this Court has always viewed Griggs as a hiring case, regardless of the fact that by the time the Court issued the decision and the procedural posture, there were no initial applicants that the order applied to. It has always been treated as a hiring case. Additionally, the Supreme Court in the Dothard case referred to Griggs as having been a hiring case. It's just consistently been viewed that way. And actually, the Northern District of California, in ruling on this exact issue, said that Griggs applied and was binding in exactly this issue about 4A2's coverage because of its interpretation with respect to applicants. So there's really no reason to believe that it doesn't apply to applicants, even under this Court's own precedent. And speaking of this Court's own precedent, Francis Parker, the case that held before Smith that there was no disparate impact cause of action at all under the ADEA, is not binding on this Court. We want to be particularly clear about this point because CAREfusion has relied on it. Francis Parker was overruled in Smith. And it basically held that based on the Supreme Court's Hazen paper decision, which was a disparate treatment decision about stereotyping, and because of the way that the Court read the language of the RFOA defense at the time, that there was no disparate impact cause of action under the ADEA at all. Smith made clear that that's not the case and overruled all contrary cases. So Francis Parker is just not good law anymore at all. Francis Parker did, however, address this specific question, which Smith may or may not have decided. And I guess one of the concerns that I have is, you know, if we just look, if you take the Title VII language and the 4A2 language in the AJACT, lay them next to each other, there's a difference. And that's the difference that was focused on in Francis Parker. Your argument depends a great deal, in essence, on going back to Griggs, arguing that that was the same language. Were those points developed in the briefing in Francis Parker to explain the context? Do you know? I'm not sure how specifically the parties focused on that, Your Honor, because it was really a broader question percolating in the circuits at the time about disparate impact under the ADEA in general. Right. Francis Parker's discussion of the comparison between the two statutes has a fatal flaw, which is that it said that the Griggs Court was interpreting the current version of Title VII, which has the or applicants language, and that's just not the case. The Eleventh Circuit actually pointed this out in its panel decision before it went en banc, but that's an error that the Francis Parker Court made, saying that Griggs had only interpreted Title VII to cover applicants in its equivalent provision because it had the applicants language in it. That's not true, of course, because Griggs was interpreting the pre-1972 amendment version, and that's one reason that it's particularly clear that the Court was not focused on this issue of statutory interpretation that we have today, because it wasn't even fully considering the issue enough to recognize the correct version of the statutory provision at issue in Griggs. And then, of course, Smith went on to cite two applicant cases as appropriate disparate impact cases. So even if only implicitly the Smith Court recognized that applicants were covered and really never questioned that that would be the case. Which were those two? Let me just find those really quickly. They were a case involving teachers and grocers. It was a Sixth Circuit case called Woodin v. Board of Education of Jefferson County and Faulkner v. Super Value Stores. So that was applicants for a teaching position and applicants for grocer positions that the Supreme Court referred to as appropriate disparate impact cases. And so the Supreme Court made pretty clear that it didn't draw a distinction between applicants for employment and current employees. And in the Francis Parker decision, that was just not the focus of it. As we mentioned in our briefing, the difference between the two statutes was mentioned, not as a separate alternate basis for why the plaintiff didn't have a cause of action, but in addressing some of the dissent's arguments about identical coverage between Title VII and the ADEA. They are different now. And, of course, the briefing discusses why the amendment in 1972 was meant to codify Griggs, not to change the coverage of the statute. But critically, the analysis in Francis Parker was incorrect, presumably because the court was just not focused on that issue and didn't really need to reach it. And it wasn't really laid out in those briefs. I think that's right, Your Honor. I have them in front of me. Then, yes, certainly that seems to be the case. Was it framed in Francis Parker more of a response to the dissent in that opinion? Yes, Your Honor. That's exactly right. Judge Cudahy had said you're supposed to interpret Title VII and the ADEA consistently, and the majority said, well, in this case, that's not true. There are differences. One of them is this provision that was addressed in Griggs for Title VII includes applicants, and that's just not true because at the time it didn't say or applicants as it does today. But that's exactly right. The majority was responding to the dissent's sort of more generalized statement that the two acts should be construed consistently and said that this is one way in which they viewed it to be different, not because it was a separate basis for holding that there was no cause of action. It's just sort of the way that it developed because of the argumentation in the case. And, in fact, in Smith, the Supreme Court referred to Griggs as a precedent of compelling importance in this case, so it's really important to get Griggs right, and that's what we've done here in pointing out exactly that it really does cover the issue, and that the 1972 amendment just doesn't really have any effect on that because it was merely meant to confirm Griggs, and that's what it says in the legislative history. Another reason to be particularly skeptical that Congress would have cut out protections for applicants is that hiring was one of its most predominant concerns in the legislative history. In the Wirtz Report in particular, and, again, Smith pointed out how important the Wirtz Report was, and this is just one of the key pieces of the legislative history, but the Supreme Court found it compelling, that that report, which was about age discrimination in the market, really anticipated a lot of the exact types of employment barriers at issue in Griggs, which were facially neutral but that tended to bar people in the protected class from entering the workforce, educational requirements, physical fitness testing is referred to, and that. So Smith's focus on how important it is that the Wirtz Report is so prescient in anticipating Griggs really shows that there is. We're in your rebuttal time, I just thought I'd tell you. Yes. Thank you, Your Honor. Thank you, Ms. Smith. For the defense, Mr. Schenberg. Please, the Court. Because the text of the statute is the primary determinant of its meaning, I'd like to start with the text and then address counsel's arguments one by one. Congress demonstrated four separate times that it intends applicants for employment not to be covered in 4A.2, and it has not been cryptic about it. First, sections 4C and 4D explicitly cover both employees and applicants for employment. In 4A.2, Congress refers to employees or employment twice but never to applicants. That difference is presumed to be intentional. Second, Congress amended the mirror. Do you think that inference is conclusive? It's a presumption of intentionality, but there are more of them to come, Your Honor. Okay. Congress amended the mirror version in Title VII by explicitly adding applicants for employment but did not make that change to 4A.2 itself, and that difference is presumed to be intentional. Third, Congress amended the ADEA itself in 1974 by adding 29 U.S.C. 633A. In that provision, Congress protected both federal employees and applicants for federal employment, but it did not go back and add applicants to 4A.2. That difference is presumed to be intentional. And, of course, 4A.2 itself, it must be read broadly in the context of all these other statutory provisions. The first part of 4A.2 answers who can't the employer classify in a prescribed way. Right there in the text it says the employer can't classify his employees. The second part of 4A.2 answers what is the effect that the employer's classification cannot have. The text prescribes any effect that would adversely affect anyone's status as an employee. We already know from 4C and 4D that status as an employee does not include applicants. And even without that context, a person has no status as an employee that could be affected until he's an employee. Until he is hired, his status is as an applicant. How about status, yes or no? That would be if it said denied status, sure, but that's not what it says. Mr. Schenberg, let me ask you about this case. Yes, of course. With a slight variation. Let's suppose we've got two applicants for this job where your client said minimum three years, maximum seven years experience. Both of them are 50 years old. Both have practiced law for more than ten years. One is an outside applicant like the plaintiff in this case. The other is already an employee of the company who doesn't get along with his current boss. If I understand your position correctly, the second plaintiff would be able to assert a disparate impact claim, but the first could not. Is that right? Well, first of all, we say, particularly in the circumstances of this case, that seems like a very unlikely hypothetical. This is an entry-level legal position. Bear with me. Sure. I understand. I can vary it in various ways, but let's focus on this distinction that you've given. Right, of course. Disparate impact. Our position is that disparate impact cause of action belongs to employees, but not to applicants. So, first applicant cannot sue for disparate impact challenging the seven-year maximum. The second one could. Theoretically, I suppose that's the distinction. So why on earth should we draw that distinction or infer that Congress drew that distinction? Well, first of all, because the purpose of the statute, first and foremost, must be determined from what Congress said and what it didn't say. Also, I want to point out to the court that, as it probably already knows, drawing a line between folks who are already employees and folks who are simply applying to be employees, that's a common line to draw in employment law, a very common line to draw in employment law. And so it's not terribly surprising that Congress might offer more protection to people who are already employees. Any indication? This line is hard to find from the text, and it's a little hard to see why it should be drawn. I understand your textual arguments, and we've got this very unusual situation with Griggs and the amendment to Title VII without amending the ADEA, but I find it very difficult to grasp why those two applicants should be treated differently. Again, it's a common line that's drawn. I would urge the court to look at it, and I apologize. What's the best example where we draw that sort of line? Well, I will urge the court to take a look at a series of cases because there's not much, obviously, on this particular point. But for support for my text-based argument, there's a series of cases that construe Section 525 of the Bankruptcy Code. That section prohibits discrimination in employment because somebody has filed bankruptcy. There are two provisions. The first one deals with, I believe, public employers, and it covers applicants and employees. The second one applies only to private employers, and it only says you can't discriminate in employment. So you can do credit checks on applicants. There are a bunch of cases where applicants have tried to squeeze themselves into the definition of employment, and the courts have uniformly rejected it. At least three different circuits have rejected it, and none have ruled it in favor. So that is a common line. You might ask the same question about those people who filed bankruptcy, why won't you get more protection than the other? But it just is the way Congress has drawn the line. I would also say that under your theory, how would we apply this distinction to an applicant who is employed by a sister subsidiary of the employer? Well, if they're different employers, I think they are simply new applicants, would be my thought without, frankly, having considered that question before this very moment. But what I would like the Court to focus on is that Congress knew how to protect applicants when it wanted to protect applicants. It knew how to say applicants when it wanted to protect applicants. Ms. Smith wants to say, well, it didn't specifically say, hey, this doesn't protect applicants, but that's not the way we read statutes. There's a presumption against reading words into it, and I think that's what Ms. Smith's argument would have you do, would read applicants in when it's not there. And frankly, Ms. Smith's interpretation would make the reference to status as applicants surplusage in 4C and 4D. It's not the way statutes should be read, and I think that the clarity of the text is reflected in this Court's statement in Francis Parker that 4A2 omits applicants. But aren't you offering an alternative interpretation of this text than Title VII has been interpreted, and even in Griggs, because nowhere in Griggs or any of the jurisprudence post-Griggs regarding Title VII litigation has interpreted otherwise to modify the term individual, any individual. So just adding job applicant was just maybe further clarifying something, but doesn't mean that it wasn't included in the original text or in the text of the ADEA, or otherwise adversely affects the status as an employee because of the individuals, has never been interpreted in Title VII jurisprudence the way that you're offering it here that I'm aware of. Title VII, first of all, the only case from Title VII jurisprudence that we could look to would be Griggs because it's pre-amendment. All the cases post-amendment, whether they refer to Griggs or not, are construing a statute that has clearly added applicants. Griggs itself doesn't talk about applicants, and the notion that it uses this general language does exactly what this Court has cautioned against. It wrenches general language out of an opinion, and it puts it out of context. So I don't think we can look to anything in Griggs because it never considered this issue. The post-Griggs cases also we can't consider because they're post-employment. How about the way Griggs formulated the issue in the first sentence of the opinion? I don't recall exactly what the first sentence is, but I do recall this from Griggs, which is it didn't hardly look at the text at all. It was really looking at this purpose of fixing the effects of racism and not freezing them in place. I do want to address plaintiff's argument about this word individual because it's the only time plaintiffs look to the text, which ought to be what the courts are looking at. The word plaintiff makes this kind of convoluted argument that the word individual has to mean the same thing in two places. But the word individual does mean the same thing in 4A1 and 4A2. It means a single person. But that doesn't mean that 4A1 and 4A2 themselves cover the universe of individuals. Who they cover depends on the other words in the provision. Individual only appears in a phrase immediately prior to the word otherwise. Otherwise is a catch-all that makes clear that comes right before it is a subset, an example of ways that a person could adversely affect his status as an employee. Reading a preceding phrase about individuals as a separate item would render the otherwise superfluous. This is a common statutory construction, an example followed by the word otherwise. We also have, though, an authoritative interpretation of essentially identical language in Griggs. Sorry, it took me a while to find the language, but Chief Justice Berger started the opinion. We granted the writ in this case to resolve the question, whether an employer is prohibited by the Civil Rights Act of 1964, Title VII, from requiring a high school education or passing of a standardized general intelligence test as a condition of employment in or transfer to jobs when, in essence, the standards are not shown to be necessary. That doesn't say applicant for employment. It says in employment, a person who is already employed or transferring to a different job. Griggs didn't involve applicants. It simply didn't involve applicants, and the Court never considered this issue. It would be really reading beyond the text of the statute and beyond the facts of Griggs. It's one thing for the Supreme Court to engage in considered dicta, but this is unconsidered dicta if it's anything at all. It's not addressing this situation. Who has addressed the situation is Congress, and it's made clear that when it wants to cover applicants, it knows exactly how to do that. The individuals covered in 4A.2 are those who can have their status as employee affected, and we know from 4C and 4D that that's not applicants. This issue of trying to capture Griggs as if it was some kind of law that interpreted 4A.2, plaintiff has tried to say that the amendment of 703A.2 didn't actually change anything, that it was codifying something. But, first of all, that contradicts a statutory canon that when Congress acts to amend a statute, it does so to enact substantial change. Ross versus Blake in the Supreme Court. That's often true, but Congress also will sometimes act to clarify. You're right, Your Honor. What does the legislative history about the 72 amendment tell us? I want to do that because it's not as plaintiff's briefs have suggested. Didn't the House Committee specifically say we're sticking with Griggs? The March 1972 conference report, which is what was voted on and passed by Congress, doesn't say anything about Griggs. It doesn't say anything about being declaratory of prior law. It doesn't say anything about it. That's 118 Congressional Record 6643. It doesn't say anything. Plaintiff asserts in his brief that a June 1971 House Committee report, 92-238, suggests that the amendment to 703A2 is in accord with Griggs. But that's also just wrong. That report references Griggs twice, and neither time has anything to do with 703A2. So it just was factually wrong? That assertion is wrong. The references to Griggs are not with regards to this particular mirror provision of 4A2. Moreover, plaintiff ignores that the changes to 703A2 were first proposed in HR 17555, which is the year before Griggs was decided.  The 1971 Senate Committee report, 92-415, also doesn't mention Griggs with regards to job applicants. Now, it does say that the changes to 703A2 are merely declarative of existing law. This is just the committee report. It doesn't say what existing law, though. It doesn't say anything about it. There are three cases that are referred to, but they're only referred to in a personal statement submitted by two senators. Now, the Supreme Court has been clear that the value of what any individual legislator might have to say about something is of very little value. But here, they're of even less value because the three cases that the two senators referenced are about intentional, facially discriminatory policies that don't have anything to do with disparate impact. Moreover, even if, and this is not what happened by any stretch of the imagination, but even if the entire 1972 Congress had said, hey, we're making this change, we're adding applicants, and by the way, we think that's what the 1964 Congress meant all along, that would be entitled to little if any weight. Consumer Product Safety Commission versus GTE Sylvania. The reason for that is it's not Congress's job to interpret what a prior Congress did. It's the Court's job to do that. The most important indicator of congressional purpose is what Congress actually wrote in the statute. Just because something is consistent with somebody's idea of the purpose doesn't mean it's included in the statute. Even if the text appears to undercut a goal of the statute, the Court follows the text, Baker Botts. Moreover, the Wirtz Report was hardly a blueprint for this statute. It recommended legislation only with regards to facially discriminatory hiring policies. You're out of time, but if you'd like to wrap up, go ahead. Your Honors, Congress knew how to protect job applicants when that's what it wanted to do. Ms. Smith would have this Court read in a protection for job applicants that simply isn't justified by the text. Somebody's purpose of the ADEA aside, we can't read into this text words that aren't there. There is a reason why my argument is straightforward and says, look at the text, Congress knew how to say this when it wanted to. There's a reason why Ms. Smith is much more convoluted and strained, and that's because Ms. Smith is trying to create something that simply isn't there. We urge this Court to follow the Eleventh Circuit in Villareal and affirm the dismissal funded by the District Court. Thank you very much. Thank you, Mr. Jenberg. Ms. Smith, rebuttal? How much time? You gave him a little extra time. Take three minutes. Thank you, Your Honor. I'd like to just briefly address a couple of points. The first is Section 4C2, which is very similar to 4A2, the employer disparate impact provision, but with applicants. There are a few different reasons to believe that that's not nearly as compelling as my colleague would like it to be, and, in fact, they haven't responded to this at all in the briefing, despite the fact that it was raised in the opening brief. It's one of the many textual arguments that they have never addressed. One of the key points about this is that C2 applies to labor organizations who operate hiring halls, and you can see this in the definition, Section 630E, which refers to the definition of a labor organization as one which procures employees for an employer or procures for employees opportunities to work for an employer. As the dissent in Villareal makes clear, unions operate under the statute in a way where they may refer people in an independent capacity as applicants. So there's a very good reason that applicants appears there. Another reason that it doesn't particularly matter is that that adverse inference that my opponent would like to draw was of no consequence to the court in Griggs. And as the court is aware, the idea that Griggs simply had nothing to do with hiring is contrary to this court's precedent. It's contrary to what Griggs itself said. That's not an offhand reference to employment in or transfer to a job, as this court has recognized repeatedly. It was about job applicants. And so to ignore Griggs is really to ignore the most compelling precedent on this issue. So that supposed adverse inference with 4C2 would have been the same adverse inference with 703C2, and that just didn't concern the court at all. We're not trying to read in applicants. We're trying to make sure that they're not read out, despite the fact that there's no indication whatsoever that that's what Congress intended to do. One other point I wanted to make is about the addition of 633A, the federal sector provision. That provision is written very differently and was supposed to encapsulate a whole other group of employees in a totally different context. Again, to read an adverse inference with 4A2, because that provision also includes applicants, really doesn't make any sense. It's a very differently written provision, and people actually dispute whether disparate impact is covered under that provision at all. And that's obviously not at issue here. But the point is that it's framed so differently that drawing a comparison between those two doesn't really make any sense. I'd like to briefly, if this court would like to address the exhaustion issue in this case. My opponent didn't raise it at all, in case the court had any questions about that. I think we're familiar with Cheek against Western Life Insurance. Yes, Your Honor. That's the case that creates the standard for when the charge is reasonably related to the claim that's being brought. Thank you, Counsel. The case will be taken under advisement.